# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>(1) One black Apple iPhone belonging to Faith Nichole DUNFORD Seized as Exhibit N-1, File No. RU-20-0059 | Case No. **20-MJ-2387** |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the   Southern   District of   California  , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-1, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21, USC sec. 841, 846, 963 | Possession with Intent to Distribute a Controlled Substance<br>Conspiracy to Distribute a Controlled Substance<br>Conspiracy to Import a Controlled Substance |

The application is based on these facts:

See Attached Affidavit of DEA Special Agent Sean Turpie, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____ )* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Sean Turpie*
Applicant's signature

Special Agent Sean Turpie, DEA
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
  telephone   *(specify reliable electronic means)*.

Date:   06/18/2020

Judge's signature

City and state:   San Diego, California        Hon. Andrew G. Schopler, U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Special Agent Sean Turpie, being duly sworn, hereby state as follows:

## INTRODUCTION

1. I submit this affidavit in support of an application for a warrant to search the following electronic device(s):

> (1) One black Apple iPhone belonging to Faith Nichole DUNFORD Seized as Exhibit N-1, File No. RU-20-0059
> ("Target Device 1")
> (2) One Samsung (#R58J865Q48T) cellular Phone belonging to Ernesto GOMEZ Seized as Exhibit N-2, File No. RU-20-0059
> ("Target Device 2")

as further described in Attachments A-1 and A-2, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Section 841, 846 and 963, as further described in Attachments B-1 and B-2. The requested warrant relates to the investigation and prosecution of Faith Nichole DUNFORD and Ernesto GOMEZ for possessing approximately 9.72 kilograms (21.42 pounds) of methamphetamine. Both Target Device 1 and Target Device 2 are currently in the evidence vault located the Drug Enforcement Administration (DEA) San Ysidro District Office (SYDO) located at 2055 Sanyo Avenue, Suite 220, San Diego, CA 92154.

2. The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the respective Target Devices, it does not contain all the information known by me or other agents regarding this investigation. All dates and times described are approximate.

## BACKGROUND

3. I have been employed as a Special Agent with United States DEA since 2003. I am currently assigned to the DEA District Office in San Ysidro, California. I am a graduate of the DEA Academy in Quantico, Virginia.

4.      During my tenure with DEA, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular the ways in which narcotics pass into the United States from Mexico at Ports of Entry and are then transported and distributed within the United States.

5.      I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. I know that drug traffickers often require the use of a communication facility to negotiate times, places, schemes and manners for importing, possessing, concealing, manufacturing and distributing controlled substances and for arranging the disposition of proceeds from the sales of controlled substances. I know that professional drug operations depend upon maintaining their extensive contacts. The communication facility enables drug dealers to maintain contact with drug associates, drug suppliers and drug customers. I also know that drug traffickers sometimes use fraudulent information, such as nominee names and false addresses, to subscribe to communication facilities, especially emails, cellular phones, messaging apps and frequently use communication facilities to thwart law enforcement efforts to intercept their communications. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the driver to provide further instructions regarding the transportation of the narcotics to a destination within the United States.

6.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and

location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

    a.    tending to indicate efforts to import and distribute controlled substances from Mexico into and within the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation and distribution of controlled substances from Mexico into and within the United States;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the importation and distribution of controlled substances from Mexico into and within the United States;

    d.    tending to identify travel to or presence at locations involved in the importation and transportation of controlled substances from Mexico into and within the United States, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

### FACTS SUPPORTING PROBABLE CAUSE

7. On June 13, 2020, at approximately 8:21 p.m., defendant Faith Nichole DUNFORD and Ernesto GOMEZ approached the United States Border Patrol (USBP) checkpoint located on Interstate 8 near Pine Valley, California. DUNFORD was the driver and Defendant 2 was the passenger in a black 2016 Volkswagen Jetta bearing California license plate 7RJE687. During the primary inspection, DUNFORD stated that she was coming from Calexico, California. Defendant 2 was questioned but would not respond. DUNFORD began answering questions for Defendant 2. It was at this time the vehicle

3

was referred to secondary inspection.  Agents asked DUNFORD for consent to search her vehicle and she replied "yes."  During the vehicle search, a USBP agent found that the spare tire was not in its factory compartment. The USPB agent lifted up the spare tire cover and noticed a black duffle bag stored in the spare tire compartment.  The USBP agent pulled out the duffle bag from the spare tire compartment, unzipped it, and observed multiple cellophane wrapped bundles inside.  It was at this time that a USBP K-9 unit was used to sniff the contents of the duffle bag.  The K-9 unit positively alerted on the cellophane bundles for the presence of narcotics. USBP agents retrieved 12 bundles from inside the duffle bag.  All of the bundles were wrapped in cellophane and black electrical tape.  USBP agents then opened one of the bundles for testing purposes.  USBP agents extracted a crystalline substance which was tested with Thermo Scientific TruNarc testing device.  The sample tested positive for the properties and characteristics of methamphetamine.  DUNFORD and Defendant 2 were placed under arrest.  Following their arrest, DUNFORD and Defendant 2 were found to be in possession of their respective Target Devices.  Both items were seized by USBP agents.

8. Later, agents read DUNFORD her *Miranda* rights, and she agreed to speak to agents without an attorney present.  Defendant 1 stated that she did not know who owned the methamphetamine found in her vehicle or how it got there.

9. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Devices.  In light of the above facts and my experience and training, there is probable cause to believe that DUNFORD and Defendant 2 were using their respective Target Devices to communicate with others to further the distribution of illicit narcotics within the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also

often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics. Based on my training and experience, it is also not unusual for individuals, such as DUNFORD and Defendant 2, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search Target Device 1 and Target Device 2 for data beginning on May 13, 2020, up to and including June 13, 2020.

## METHODOLOGY

10. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

11. Following the issuance of this warrant, I will collect the Target Devices and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

12. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within 90 days, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

13. Law enforcement has not previously attempted to obtain the evidence sought by this warrant.

## CONCLUSION

14. Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the Target Device will yield evidence of Defendant's violations of Title 21, United States Code, Sections 841, 846 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachments A-1 and A-2 and seize the items listed in Attachments B-1 and B-2 using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

*Sean Turpie*
_____
Special Agent Sean Turpie
Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 18th day of June, 2020.

_____
Honorable Andrew G. Schopler
United States Magistrate Judge

7

# **ATTACHMENT A-1**

PROPERTY TO BE SEARCHED

The following property is to be searched:

    (1) One black Apple iPhone belonging to Faith Nichole DUNFORD Seized as Exhibit N-1, File No. RU-20-0059 ("Target Device 1")

Target Device 1 is currently in the possession of the Drug Enforcement Administration, San Ysidro District Office, located at 2055 Sanyo Ave Suite 220, San Diego, CA 92154.

# **ATTACHMENT B-1**

## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A-1 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of May 13, 2020, up to and including June 13, 2020:

a. tending to indicate efforts to import and distribute controlled substances from Mexico into and within the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation and distribution of controlled substances from Mexico into and within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation or distribution of heroin, or some other federally controlled substance, from Mexico into and within the United States;

d. tending to identify travel to or presence at locations involved in the importation and distribution of controlled substances from Mexico into and within the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the Target Device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 841, 846 and 963.